**E-FILED**
Thursday, 13 May, 2010  12:51:58 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES  DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### Urbana Division

| | |
|---|---|
| TRAVIS N. WALTHOUR, | ) |
| | ) |
| **Plaintiff,** | ) |
| v. | ) |
| | )  **Case No.  08-2254** |
| JOHN E. POTTER, Postmater General, | ) |
| United States Postal Service, | ) |
| | ) |
| **Defendant.** | ) |

# ORDER

In November 2008, Plaintiff Travis Walthour, acting *pro se*, filed a Complaint (#7) against Defendant John Potter, Postmaster General of the United States Postal Service, alleging violations of federal law.  In May 2009, Plaintiff filed an Amended Complaint (#32).  Federal jurisdiction is based on federal question pursuant to 28 U.S.C. § 1331.  The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge.

In March 2010, Defendant filed a Motion for Summary Judgment (#55).  In April 2010, Plaintiff filed his response, titled Reply to Defendant's Motion for Summary Judgment (#69). Defendant subsequently filed a Reply to Plaintiff's Response to the Defendant's Motion For Summary Judgment (#70).  After reviewing the parties' pleadings, memoranda, and evidence, this Court **GRANTS** Defendant's Motion for Summary Judgment **(#55)**.

## I.  Legal Standard

A court will grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material factual dispute exists that requires a trial.  *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).  The party seeking summary judgment

bears the initial burden of showing that no such issue of material fact exists. *Celotex,* 477 U.S. at 323.

The Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). However, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, he must go beyond the pleadings and support his contentions with proper documentary evidence. *Celotex,* 477 U.S. at 322-23. Because the purpose of summary judgment is to isolate and dispose of factually unsupported claims, the nonmoving party must respond to the motion with evidence setting forth specific facts showing that there is a genuine issue for trial. *See* FED. R. CIV. P. 56(e); *Albiero v. City of Kankakee,* 246 F.3d 927, 932 (7th Cir. 2001). To successfully oppose a motion for summary judgment, the nonmoving party must do more than raise a "metaphysical doubt" as to the material facts, and instead must present definite, competent evidence to rebut the motion. *Wolf v. Nw. Ind. Symphony Soc'y,* 250 F.3d 1136, 1141 (7th Cir. 2001); *Albiero,* 246 F.3d at 932.

## II. Background

At relevant times, Plaintiff worked as a mail carrier for the Urbana Post Office; his job began around July 2006. Kathy Burr was Postmaster at the Urbana Post Office and Rebecca Myers was Plaintiff's supervisor.

In his complaint, Plaintiff alleged that Defendant violated Title VII by discriminating against him based on his race (Count I) and by retaliating against him after he exercised his right to file a complaint against his employer (Count II). Although Plaintiff's Equal Employment Opportunity Commission (hereinafter "EEOC") documents refer to discrimination based on race, color, and sex, Plaintiff's complaint and amended complaint allege discrimination based only on race. Accordingly, Plaintiff has waived any claims of discrimination other than race discrimination.

2

The Court is cognizant of its special obligation with respect to a *pro se* litigant. *See Caruth v. Pinkney*, 683 F.2d 1044, 1050 (7th Cir. 1982). The Seventh Circuit has defined a court's role as insuring that the claims of a *pro se* litigant are given "fair and meaningful consideration." *Madyun v. Thompson*, 657 F.2d 868, 876 (7th Cir. 1981). Furthermore, a *pro se* plaintiff is entitled to a great deal of latitude where procedural requirements are concerned and is entitled to provide supporting evidence. *Haines v. Kerner*, 404 U.S. 519, 519-20 (1972). When responding to a summary judgment motion, a *pro se plaintiff* need not comply with the specific procedural requirements described in Rule 7.1(D) of the Local Rules for the Central District of Illinois (*see* CDIL-LR 7.1(D)(6)). Nevertheless, to avoid summary judgment, he must respond with admissible evidence setting forth specific facts showing that there is a genuine issue for trial. *Michael v. St. Joseph County*, 259 F.3d 842, 845 (7th Cir. 2001).

In support of his claims, Plaintiff provided his deposition, several unsworn statements or letters by Plaintiff and others, copies of several grievance forms submitted by Plaintiff, and letters from two of his coworkers, Johnathon McMullen and Terry Prinn, accompanied by declarations signed by McMullen and Prinn stating that "my statement was written by me and is true." (McMullen Declaration, Prinn Declaration.) These declarations do not indicate what "statements" they are referring to; furthermore, they are dated April 3, 2010, and March 30, 2010, respectively, while Prinn's "statement" or letter is dated March 2008 and the other letter is undated. It is questionable whether these letters would be admissible, but the Court will give Plaintiff the benefit of the doubt on the issue of admissibility at this time. The Court has reviewed these documents and the other documents Plaintiff filed during the case.

Rule 56(e) of the Federal Rules of Civil Procedure requires that affidavits offered in opposition to a summary judgment motion be made on personal knowledge, setting forth facts that would be admissible in evidence, and showing affirmatively that the affiant is competent to testify to the matters stated therein. FED. R. CIV. P . 56(e). As an initial matter, only Plaintiff's deposition and the McMullen and Prinn letters arguably satisfy Rule 56(e); the remaining documents are not admissible and the Court may not consider them. Furthermore, many of the assertions in the McMullen and Prinn letters do not constitute the "definite, competent evidence"

required to rebut Defendant's facts.  *See Michael*, 250 F.3d at 845.  For example, in McMullen's undated letter, he states that he has witnessed racist treatment.  Although "personal knowledge" may include inferences and opinions, those inferences must be substantiated by specific facts.  *Drake v. Minn. Mining & Mfg. Co*., 134 F.3d 878, 887 (7th Cir. 1998) (citing *Davis v. City of Chi.*, 841 F.2d 186, 189 (7th Cir. 1988)).  "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted."  *Hadley v. County of Du Page*, 715 F.2d 1238, 1243 (7th Cir. 1983).  McMullen's statement and others like it constitute the type of conclusory allegation that Rule 56 counsels should be disregarded on summary judgment and the Court will not consider those conclusory statements.

To avoid summary judgment against him, Plaintiff must show the existence of a dispute of material fact.  Fed. R. Civ. P. 56(e).  All properly supported material facts set forth in either party's case are deemed admitted unless properly controverted.  *See Flaherty v. Gas Research Inst.*, 31 F.3d 451, 453 (7th Cir. 1994).  Here, Defendant presented his properly supported Statement of Material Facts.  However, Plaintiff's responses to those facts, if any, were not supported by reference to admissible, competent evidence.  When the nonmoving party does not adequately respond to the moving party's statement of facts, the nonmoving party concedes the moving party's version of the facts.  *Waldridge*, 24 F.3d at 922.  As a result, the Court will treat Defendant's material facts as undisputed, unless Plaintiff has clearly contradicted them with admissible evidence.

Nevertheless, Plaintiff's failure to dispute Defendant's version of the facts does not automatically result in summary judgment for Defendant.  *See LaSalle Bank Lake View v. Seguban*, 54 F.3d 387, 392 (7th Cir. 1995) (a party's failure to submit a response to a motion for summary judgment does not automatically result in summary judgment for the moving party).  It remains the moving party's burden to demonstrate that no genuine issue of material fact exists

4

and that he is entitled to summary judgment as a matter of law.  *Doe v. Cunningham*, 30 F.3d 879, 883 (7th Cir. 1994).  Accordingly, the Court must determine whether the undisputed facts in this case show that summary judgment is proper as a matter of law.  *LaSalle Bank*, 54 F.3d at 392.

### III.  Analysis

Defendant argues that he is entitled to judgment as a matter of law on Counts I and II because Plaintiff has failed to establish a *prima facie* case as to either claim.

As Plaintiff points out, racial discrimination in employment is clearly contrary to law. This does not mean, however, that an employee is entitled to a stress-free environment or that every unpleasant aspect of an employee's working environment rises to the level of actionable conduct simply because the employee belongs to a protected class.  As the Seventh Circuit notes, "not everything that makes an employee unhappy is an actionable adverse action."  *Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1116 (7th Cir. 2009); *Crews v. City of Mt. Vernon, et. al.*, 567 F.3d 860, 869-70 (7th Cir. 2009) (stating that a plaintiff must show more than petty slights or minor annoyances that often take place at work and that all employees experience).

### A.  Scope of Count I

Defendant first argues that the applicable statute of limitations bars any claims in the complaint that were first alleged in Plaintiff's original EEOC case.  The Court agrees.

### 1.  Timeliness of Plaintiff's EEOC Filings

Plaintiff first contacted EEOC on August 24, 2007, to initiate a claim of discrimination; this case was designated number 4J-604-0135-07 (hereinafter #135).  On September 20, 2007, the EEOC notified Plaintiff that it had completed processing his claim of discrimination and that he had a right to file an individual complaint within fifteen days of the day he received the notice.

Plaintiff filed a formal complaint on October 17, 2007, eight days after the deadline.  The EEOC dismissed the case #135 on October 30, 2007, for failure to timely file a formal complaint. Plaintiff did not appeal that dismissal.

Plaintiff also contacted EEOC on August 30, 2007, to initiate a second case, designated number 4J-604-0155-07 (hereinafter #155).  After Plaintiff timely filed his formal complaint, the EEOC dismissed Plaintiff's second case, #155, on November 8, 2007.  Plaintiff appealed that dismissal.  The EEOC dismissed the appeal on July 24, 2008, and sent Plaintiff a right-to-sue letter.  Plaintiff timely filed the instant suit on October 20, 2008.

Although Plaintiff states in his response that he believes his claims are timely, the evidence he presented does not raise a factual dispute as to the issue.  To the extent that Plaintiff may be attempting to argue that the doctrines of equitable tolling or equitable estoppel apply to extend the statute of limitations, the Court disagrees for the reasons Defendant explained in his brief.  The facts show that Plaintiff did not timely file a formal complaint in #135 and he did not appeal the EEOC's dismissal of that case.

### 2.  Scope of Plaintiff's Claim in Count I

Because Plaintiff's first case was dismissed for failing to timely file a formal EEOC complaint, Defendant contends that the applicable statute of limitations bars Plaintiff from asserting any claims of discrimination based on the conduct raised in that case #135.  The Court agrees.

Applicable case law supports Defendant's argument that Plaintiff has waived any claim he raised in case #135.  *See Spears v. Mo. Dep't of Corrections and Human Res.*, 210 F.3d 850, 853 (8th Cir. 2000) (stating that a plaintiff who timely filed suit on his second EEOC charge was barred from asserting claims based on events that formed the basis of a prior EEOC charge that he failed to timely sue upon); *Vitello v. Liturgy Training Publ'ns*, 932 F. Supp 1093, 1098 (N.D. Ill. 1996).  Furthermore, this is true even if Plaintiff included the same claim or conduct in his second EEOC case.  *Vitello*, 932 F. Supp at 1098 (stating that allowing a plaintiff to pursue

claims alleged in his second case that are the same as those in an earlier case would circumvent the filing requirement) (citing *Soso Liang Lo v. Pan Am. World Airways, Inc*., 787 F.2d 827, 828 (2d Cir. 1986) (per curiam) (finding that where a plaintiff failed to timely bring suit on his first EEOC complaint, a subsequent EEOC charge and right-to-sue letter did not revive claims asserted in the first case)).

To determine the scope of the claims remaining in the case, the Court must consider what claims Plaintiff raised in case #155 that he did not previously assert in case #135.

In case #135, Plaintiff described his claims as follows:

> I've been experiencing a measure of hostility every since [I arrived one year six months ago].  I'm the only one that is being scrutinized and single out by management, because of race, diversity in living and life style.  My work ethic are always on the line for dispute with management and the postmaster.  Every quater I'm the lowest on the overtime list.  No oppertunity for advancement requested to be supervisor 10/4/06.  Until now no response for position with Postmaster Kathy Burr.  (*Sic*)

(#135 Information for Pre-Complaint Counseling.)  Plaintiff's formal complaint stated as follows:

> I Travis N. Walthour have been ploted against by Postmaster Kathy Burr and Window Supervisor Rebecca (Becky) Meyer.  On a daily basis my work ethic are always on the line.  For Dispute.  My overtime has been taken away due to were I live and what I drive.  I have been experiencing, unfair treatment, racist acts, mental abuse, physical stress and a lot more.  (*Sic*)

(#135 EEOC Complaint of Discrimination in the Postal Service.)

In case #155, Plaintiff described his claims of discrimination based on race (African American), color (black), and sex (male) as follows:

> I Travis N Walthour have been ploted against by Postmaster Kathy Burr and Window Supervisor Rebecca (Becky) Meyer.  On a daily basis my work ethic are always on the line for dispute.  My overtime has been taken away due to were I live and what I drive.  I have been experiencing, unfair treatment, racist acts, mental abuse, physical stress and a lot more.  (*Sic*)

7

(#155 Information for Pre-Complaint Counseling.)  His formal complaint described his claims as follows:

> I have been experiencing a measure of hostility.  I've been scrutinized and single out by management, because of race, diversity in living and life style.  My work ethic are always on the line for dispute with management and the postmaster. Every quater I'm the lowest on the overtime list.  My paystub reflects the amount. No opportunity for advancement requested to be supervisor.  I have been ploted against by Kathy Burr and window supervisor Rebecca (Becky) Meyer on all accounts.  I've been experiencing unfair treatment, racist acts, mental abuse, physical stress, and a lot more.  (*Sic*)

(#155 Complaint of Discrimination in the Postal Service, dated October 22, 2007.)  Plaintiff stated that these alleged acts occurred from January 2007 to August 2007 to present (October 22, 2007).

According to the EEOC documents, Plaintiff's case #135 raised issues related to his lack of overtime opportunities, his request for advancement to supervisor on October 4, 2006, his request for a transfer to Florida, and claims related to scrutiny and criticism by management. Thus, based on applicable authority and the allegations in Plaintiff's two cases, Plaintiff is barred from pursuing those claims relating to his request to be a supervisor, his request for a transfer, discrimination in overtime assignments, and other incidents related to management scrutiny and criticism.  Even if the Court were to consider those claims, the Court agrees with Defendant that Plaintiff has not established a *prima facie* case regarding these claims for the reasons explained in Defendant's brief.

Defendant contends that the remaining claims in Count I include the following incidents and issues:  (1) two mail carriers loaded their trays in the mail hamper and not on the ledge as instructed by management (Statement of Undisputed Facts (hereinafter "SUF"), p. 10, ¶¶ 23-29); (2) in a meeting on September 18, 2007, Rebecca Myers stated that Plaintiff did not work up to his potential (SUF, p. 21, ¶ 50, Allegation A); (3) on June 20, 2007, Myers asked Plaintiff if he played golf on that Friday, a day he had taken as sick leave (SUF, pp. 24-25, ¶ 50, Allegation G); (4) while walking the route with Plaintiff in early 2007, Myers commented that Plaintiff lived in a nice area and she commented about how he could afford to live there (SUF p. 25, ¶ 50,

8

Allegation H); and (5) on June 20, 2007, Myers instructed him to return a mail hamper to his work station instead of taking it to his vehicle, but she allowed a Caucasian employee to take the hamper to his vehicle (SUF, pp. 9-10, ¶¶ 21-22).

Plaintiff has not challenged this list in his response; however, he stated that Myers' comment regarding Plaintiff's residence was part of his claim that he was denied overtime.

The Court will now consider Defendant's motion regarding these incidents that form the basis for Count I.

### B.  Count I

Defendant argues that he is entitled to summary judgment on the claims remaining in Count I because Plaintiff has failed to establish a *prima facie* case.

A plaintiff can establish a racial discrimination claim under Title VII by the direct method or the indirect method.  Under the direct method, he must present direct evidence of racial discrimination.  "Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus."  *Rogers v. City of Chi.*, 320 F.3d 748, 753
(7th Cir. 2003) (internal quotations omitted).  A plaintiff can also prevail "by constructing a convincing mosaic of circumstantial evidence that allows a jury to infer intentional discrimination by the decisionmaker."  *Phelan v. Cook County*, 463 F.3d 773, 779 (7th Cir. 2006).  Under the indirect method, in order to establish a *prima facie* case, a plaintiff must present evidence showing that:  (1) he is a member of a protected class; (2) his job performance was meeting his employer's legitimate expectations; (3) he was subject to a materially adverse employment action; and (4) the employer treated similarly-situated employees outside the protected class more favorably.  *Id.*; *see also McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

Plaintiff has failed to meet his burden of proof under either method. His claim fails under the direct method because he did not produce direct or circumstantial evidence from which a jury could conclude that the Urbana Post Office or any of its employees subjected him to discriminatory treatment *because of* his race. The only admissible evidence he presented was his own deposition testimony that his employer mistreated him because of his race. These bare assertions are not sufficient to establish a link between Plaintiff's race and his treatment by his employer. *See Karazanos v. Navistar Int'l Transp. Corp.,* 948 F.2d 332, 337 (7th Cir. 1991) ("[A] plaintiff's speculation is not a sufficient defense to a summary judgment motion.").

Plaintiff's claim also fails under the indirect method because he did not satisfy the third or fourth elements of a claim. First, the acts he complains of do not constitute adverse employment actions. A cognizable adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (quoting *Bell v. E.P.A.*, 232 F.3d 546, 555 (7th Cir. 2000)). In other words, the adverse action must materially alter the terms and conditions of employment. *Stutler v. Ill. Dep't of Corrections*, 263 F.3d 698, 703 (7th Cir. 2001); *Hopkins v. Godfather's Pizza, Inc.,* 141 F. App'x 473, 476 (7th Cir. 2005) (stating that an adverse employment action is broadly defined as a materially adverse change in the terms and conditions of employment).

As noted above, the conduct at issue includes Myers' statement that Plaintiff did not work up to his potential, her question about Plaintiff playing golf, her comment that Plaintiff lived in a nice area, and her instruction to return a mail hamper to his work station. This conduct can be described generally as comments, instructions, and criticism.

Generally, negative employment evaluations, reprimands, or criticism are not considered materially adverse employment actions. Only when a plaintiff shows that these categories of conduct led to significant job-related consequences would they be considered materially adverse

employment actions.  *See, e.g., Whittaker v. N. Ill. Univ.,* 424 F.3d 640, 648 (7th Cir. 2005) (reprimands and criticism are not adverse employment actions); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) (stating that the plaintiff's complaints did not constitute adverse employment actions, and some of the incidents were "plainly trivial" where the plaintiff complained that the Postal Service changed her shift, lengthened her commute, unfairly disciplined her, substituted a favorable evaluation for a more favorable one, issued her letters of warning, assigned her to difficult cases and gave her additional work that she perceived as outside her normal job responsibilities, refused to approve annual leave requests when work was backlogged, and denied her a parking permit for approximately four days); *Grube v. Lau Inds., Inc.,* 257 F.3d 723, 729 (7th Cir. 2001) ("unfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions"); *Bragg v. Navistar Int'l Transp. Corp.*, 164 F.3d 373, 378 (7th Cir. 1998) ("a supervisor's assessment of an employee's skills is not an adverse employment action"); *Collier v. Elgin Cmty. Coll.*, No. 4 C 7791, 2006 WL 3743135, *5 (N.D. Ill., Dec. 15, 2006) (unreported) (a plaintiff's allegation that she "received less support and greater scrutiny" than other employees does not rise to the level of an adverse employment action).

Here, these acts do not constitute materially adverse employment actions because Plaintiff has not shown that they changed the terms and conditions of his employment.

In addition, Plaintiff has failed to identify a similarly-situated employee outside the protected class who was treated more favorably than he was.  "To meet her burden of demonstrating that another employee is 'similarly situated,' a plaintiff must show that there is someone who is directly comparable to her in all material respects."  *Patterson v. Avery Dennison Corp.,* 281 F.3d 676, 680 (7th Cir. 2002) (citations omitted).  Here, Plaintiff mentioned or alleged that other "Caucasian employees" were treated differently, but he provided no names nor did he provide any evidence that these employees were comparable "in all material respects."  *Id.*

11

Regarding Plaintiff's claim that he was deprived of overtime opportunities, the Court notes that Plaintiff stated in the EEOC pre-complaint counseling form that his "overtime has been taken away due to were (*sic*) I live and what I drive." (#155 Information for Pre-Complaint Counseling.)  Consistent with Plaintiff's statement, McMullen stated in his letter as follows:

> I have personally heard both in conversations about carrier Walthour's place of residence, which is a upscale neighborhood of Urbana, and also about his personal vehicle which happens to be a E-Class Mercedes.  They both have been witnessed in conversation talking about limiting any or all overtime to carrier Walthour, insisting that he stalls to pay for his residence or personal vehicle.

(McMullen letter.)  Based on these statements, Plaintiff has acknowledged that Defendant was motivated by something other than racial animus in assigning overtime and Plaintiff cannot establish a *prima facie* case of racial discrimination based on Plaintiff's lack of overtime opportunities.

Based on the undisputed facts, the incidents Plaintiff complains of also do not establish the existence of a hostile environment.  To establish a hostile environment, the alleged harassment must be subjectively and objectively so severe or pervasive that it alters the conditions of employment and creates an abusive working environment.  *Wyninger v. New Venture Gear, Inc.*, 361 F.3d 965, 975 (7th Cir. 2004).  Relatively isolated instances of nonsevere misconduct will not support a hostile environment claim.  *Saxton v. Am. Tel. & Tel. Co.,* 10 F.3d 526, 533 (7th Cir. 1993).  Moreover, as Defendant points out, Plaintiff has not provided any evidence that links the incidents to Plaintiff's race.  For example, although McMullen's letter mentions race, it expressly states that Kathy Burr and Rebecca Myers engaged in "preferential [treatment] to those they deem 'unliked and not on their side.'"  (McMullen letter.)  This statement and the incidents McMullen describes in the letter undermine Plaintiff's claim that Burr and Myers were motivated by racial animus.

The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to establish the existence of any element essential to that party's case, and on

12

which that party will bear the burden of proof at trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  "In such a situation there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Id.*  Here, Plaintiff failed to provide evidence to establish the third and fourth elements of his racial discrimination claim in Count I or to establish the existence of a hostile environment.  Plaintiff has had ample time and opportunity to obtain evidence to back up his claims.  Because he has presented nothing more than his belief that he was a victim of racial discrimination, he has not met his burden.  After thoroughly reviewing the record, the Court concludes that Plaintiff failed to establish a *prima facie* case of racial discrimination or to raise a genuine issue of material fact sufficient to defeat summary judgment regarding the claims in Count I.  Accordingly, the Court grants summary judgment in favor of Defendant on Count I.

## C.  Retaliation

Defendant next argues that he is entitled to summary judgment on the retaliation claim in Count II.  Count II alleges that Myers retaliated against him for his protected activity when she suspended him, told him that he was wasting time, and told Postmaster Burr that he was wasting time and she could "just kill" him.

The following facts relevant to the retaliation claim are undisputed:  On October 17, 2008, Myers walked Plaintiff's route with him.  She became agitated because he ignored her instructions on how to perform his job and he was engaging in what Myers considered time-wasting activity.  She told him that he needed to stop his time-wasting practices.  (Myers declaration, ¶ 86.)  After Plaintiff told Myers that he did not have to do what Myers had told him and that he was going to deliver the mail the way he wanted to, Myers stepped away from Plaintiff and called Postmaster Kathleen Burr for a private conversation.  Myers was agitated about Plaintiff's conduct and told Burr, "I could just kill him.  You won't believe what he just did."  (Burr declaration, ¶ 94.)  She then told Burr about Plaintiff's time-wasting conduct and that he had disregarded Myers' instructions.  (Myers declaration, ¶¶ 90-91.)  Myers did not direct

these statements to Plaintiff and did not intend for Plaintiff to hear her discussion with Burr. (Myers declaration, ¶ 89.)  On October 20, 2008, Myers learned that Plaintiff had overheard her comment that she could "just kill" him, and she apologized.  (Myers declaration, ¶¶ 98–99.)

Myers also told Plaintiff at one point during the route walk that she was putting him on administrative leave after he finished that section of his route.  She then changed her mind and allowed him to complete his work day.  Plaintiff acknowledged in his deposition that Myers never actually suspended him.  (Plaintiff's dep., pp. 132-33.)  Furthermore, a "momentary" suspension does not constitute a materially adverse employment because it does not alter the terms and conditions of employment.  *See Hopkins*, 141 F. App'x at 476 ("Hopkins' momentary termination and immediate reinstatement on May 18, 2001 did not alter the terms and conditions of his employment for ADA purposes.").

As is the case for claims of unlawful discrimination, claims of unlawful retaliation can be established using a direct or an indirect method.  *See Roney v. Ill. Dep't of Transp.*, 474 F.3d 455, 459 (7th Cir. 2007).  Using the direct method, a plaintiff must present direct evidence of the following elements:  (1) he engaged in a statutorily-protected activity; (2) he suffered an adverse employment action; and (3) the adverse employment action occurred as a result of his opposition to the unlawful employment practice.  *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009).

Under the indirect method, a plaintiff who does not have direct or circumstantial evidence can raise a presumption that the adverse action resulted because of the protected activity by demonstrating four *prima facie* elements, as follows:  (1) the plaintiff complained about discrimination, (2) he was subjected to an adverse action, (3) despite his satisfactory job performance, and (4) no other similarly-situated employee who did not complain suffered such an action.  *See Sublett v. John Wiley & Sons, Inc.,* 463 F.3d 731, 740 (7th Cir. 2006).  The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the purportedly adverse employment act, after which the plaintiff may show that the employer's

14

stated reason for the plaintiff's termination was pretext.  *Traylor v. Brown*, 295 F.3d 783, 788 (7th Cir. 2002).

The deficiencies of Plaintiff's response mandate the same outcome for his retaliation claims as for his discrimination claim.  Plaintiff's acts of filing EEOC charges and a lawsuit constitute opposition to an allegedly unlawful employment practice; however, Plaintiff has offered no evidence or authority regarding the remaining elements of his claim.  He has provided no evidence of the existence of a causal connection between his filing of charges (August 24, 2007, and August 30, 2007) and a lawsuit (October 20, 2008) and Myers' actions on October 17, 2008.  *See Sauzek v. Exxon Coal USA, Inc*., 202 F.3d 913, 918-19 (7th Cir. 2000) (holding that, in the absence of evidence linking the filing an EEOC claim and the alleged adverse action, a three-month gap between the two was insufficient to establish a causal relationship sufficient to support a retaliation claim).  Based on the undisputed facts, Plaintiff has also failed to establish that he suffered an adverse employment action or that he was treated less favorably than a similarly-situated employee who did not engage in statutorily-protected conduct.  As noted above, isolated comments and employer criticism do not constitute adverse employment actions. *Griffin*, 356 F.3d at 829-30.  Thus, Plaintiff cannot defeat summary judgment on his retaliation claim and the Court grants summary judgment in favor of Plaintiff on Count II.

In his response, Plaintiff states that there are disputed issues of fact related to his claims and that questioning Defendant will provide facts to the Court.  The Seventh Circuit court has stated that summary judgment is the "put up or shut up" moment in a lawsuit, when a party must show what evidence she has that would convince a trier of fact to accept her version of events. *Johnson v. Cambridge Indus., Inc.,* 325 F.3d 892, 901 (7th Cir. 2003).  Plaintiff had the opportunity during discovery to request documents and conduct depositions to obtain evidence regarding his claims.  He failed to do so.  Furthermore, Plaintiff did not explain what facts he believes are disputed or cite any evidence to support such a contention.

15

### IV.  Summary

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment (**#55**).  This case is terminated.

ENTER this 13th day of May, 2010.

_____ s/ DAVID G. BERNTHAL _____
U.S. MAGISTRATE JUDGE
